U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 1 0 2023

CLERK, U.S. DISTRICT COURT
By_____
Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. SIDESOLVE LLC, | ) ) ) |
| Plaintiff-Relator, | ) ) |
| v. | ) Case No. 4-23CV-132-P |
| | ) **JURY TRIAL DEMANDED** |
| PAVECON LTD. CO.; PAVECON COMMERCIAL, LTD.; PAVECON PUBLIC WORKS LP; ATLAS 10 CONSTRUCTION SERVICES GP LLC d/b/a ATLAS 10 CONSTRUCTION SERVICES LLC, and CHARLES DAVID WALKER, | ) **FILED UNDER SEAL** ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT

1.    Relator Sidesolve LLC brings this action on behalf of itself and the United States of America against defendants Pavecon Ltd. Co.; Pavecon Commercial, Ltd.; Pavecon Public Works LP; and Atlas 10 Construction Services GP LLC d/b/a Atlas 10 Construction Services LLC, (collectively "Pavecon") and their owner, Charles David Walker, for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2.    This action seeks to recover funds that were loaned to Defendants through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of false applications.

3.      Sidesolve LLC is a company that uses data to investigate large-scale corporate fraud. Its goal is to use the technology it is developing to protect individuals on private healthcare plans. It is currently developing its technology using public databases. It uses computational statistics to match entities across multiple resources such as databases, social media, corporate filings, and other sources. From this broader picture, it finds fraud leads, which it follows up with a more traditional manual investigation. In sum, Sidesolve LLC uses its expertise and proprietary technology to both collect the scattered pieces of the fraud puzzle and also to put them together into a complete picture of the alleged fraud.

4.      While searching for potential PPP loan fraud in data released by the SBA, Sidesolve came across Pavecon — a family of companies owned and operated by the same individual that had applied for PPP loans totaling over $9 million. All of the PPP loans, plus interest, were forgiven in their entirety.

5.      Had these entities properly applied the SBA's Affiliation Rules for PPP loans — the purpose of which is to prevent exactly this sort of "unbundling" of companies to circumvent PPP requirements — Pavecon would not have been eligible for any PPP funding.

6.      Pavecon received a windfall, to the detriment of the federal government and the thousands of small businesses that were unable to get the financial assistance they badly needed during the pandemic.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

8.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as one or more of the defendants resides or transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

9.     Defendant Pavecon is a national paving contractor, delivering asphalt and concrete services — including asphalt and concrete paving, repair, and maintenance, since 1992. It also performs building exterior repairs and property assessments. Its corporate office is located at 3022 Roy Orr Blvd., Grand Prairie, TX 75050. It is owned and operated by its founder, Charles David Walker, who often goes by David Walker.

10.     Pavecon is comprised of multiple corporate entities and divisions, including those listed below.

11.     Pavecon Ltd. Co. has a principal address of PO Box 535457, Grand Prairie, TX 75053. Its 2019 Texas Franchise Tax Public Information Report lists David Walker as President.

12.     Pavecon Commercial, Ltd. has a principal address of PO Box 535038,

-3-

Grand Prairie, TX 75053. Its 2019 Texas Franchise Tax Public Information Report lists PVCon Management, Inc. as its General Partner.

13.    Pavecon Commercial Holding Co. Inc. owns 100% of PVCon Management, Inc. and Pavecon Commercial, Ltd. Its 2019 Texas Franchise Tax Public Information Report lists David Walker, Mark Plamondon, and Matt Shepherd as its Directors. PVCon Management, Inc.'s 2019 Report lists Mark Plamondon as its President and David Walker as its Vice President and Treasurer.

14.    According to its website: "Pavecon Commercial Concrete is a major commercial contractor that provides design, engineering, construction and general contracting for large-scale concrete buildings throughout the Dallas- Fort Worth Metroplex. For manufacturing, retail, healthcare, education and other growing sectors, Pavecon Commercial Concrete provides tilt-wall construction, structural work, flat-work, slabs, paving and infrastructure services for warehouses, medical centers, shopping centers, schools and other large buildings."

15.    Pavecon Public Works LP has a principal address of PO Box 535457, Grand Prairie, TX 75053. Its 2019 Texas Franchise Tax Public Information Report lists Pavecon Public Works GP, LLC as a general partner and David Walker as President.

16.    According to its 2019 website, which has since been merged into the

-4-

primary Pavecon website: "Pavecon Public Works is a division of the Pavecon family of construction services. We handle jobs of all sizes in the Dallas-Fort Worth Metroplex and surrounding counties, from state highways and city roads to right-of-ways and parking lots for public and private developments."

17.    Pavecon Holding Co. Inc. has a principal address of PO Box 535457, Grand Prairie, TX 75053. Its 2019 Texas Franchise Tax Public Information Report lists Charles Walker as President and Director. The report states that it is the sole owner of Pavecon Management, Inc. Pavecon Management Inc.'s 2019 Report lists Charles Walker as President.

18.    Upon information and belief, Atlas 10 Construction Services GP LLC d/b/a Atlas 10 Construction Services LLC is also a part of Pavecon Holding Co. Inc. It has a principal address of 3022 Roy Orr Blvd., Grand Prairie, TX 75050. Its 2021 Texas Franchise Tax Public Information Report lists Charles Walker as its CEO, Daniel Kilman as its President, and Pavecon Management Inc. as its registered agent.

19.    According to its website: "Atlas10 Pavement Management (PM) Consulting provides Facility Managers, Property Owners and Users with the objective condition data and treatment recommendations necessary to implement an immediate and long term comprehensive national MRR (maintenance, repair and rehabilitation) pavement management strategic plan.

-5-

Atlas10 utilizes patent pending GPS mapping technology to collect and assess defect conditions of asphalt and concrete pavement."

20.   A recent filing in the Texas Supreme Court by Pavecon (*Pavecon Holding Co., Inc. et al. v. Murphy*, No. 22-0471 (Tex. Sup. Ct., August 11, 2022)) provides the following history of Pavecon's corporate structure:

> Led by founder and longtime-CEO David Walker, the Pavecon family of companies has been in the paving business since 1992. Pavecon started its paving work in the Dallas/Fort Worth area before expanding to surrounding states. PHC [Pavecon Holding Co., Inc.] is the holding company for the Pavecon family of companies. Pavecon hired Murphy in 2012 to work as president of Pavecon's "Dallas/Fort Worth Division." Neither Public Works [Pavecon Public Works, LP] nor Ltd. [Pavecon Ltd. Co.] existed when Pavecon hired Murphy. Instead, a partnership known as "Pavecon Ltd." (PHC's wholly owned subsidiary) acted as Pavecon's operating company and performed Pavecon's paving work.
>
> By 2015, it became clear that paying additional stock bonuses risked diluting PHC's shares, which increased Pavecon's credit risk. To abate this risk, Pavecon created and executed a four-step plan to change its business structure and make corresponding changes to its executive compensation plan, effective January 1, 2015. Steps 1 and 2 changed Pavecon's business structure. In Step 1, Pavecon converted the partnership "Pavecon Ltd.," its old operating company, to a limited liability company, which became defendant Ltd. In Step 2, Pavecon spun Murphy's "Public Works Division" into a new entity — defendant Public Works. Business- wise, however, little else changed. Once president of the Dallas/Fort Worth and Public Works divisions of the old Pavecon Ltd., post-restructuring, Murphy became

president of Ltd. (the new LLC) and Public Works.

21.    In sum, Pavecon consists of different divisions, each of which separately applied for PPP funding, but all roads lead back to Charles David Walker as their primary owner and operator.

## THE PAYCHECK PROTECTION PROGRAM

22.    During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

23.    Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

24.    The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

25.    Lenders were compensated by the federal government via processing fees

based on the balance of the financing outstanding at the time of final disbursement, in the following amounts:

- Five (5) percent for loans of not more than $350,000;

- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and

- One (1) percent for loans of at least $2,000,000.

26. Borrowers had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

27. In general, the maximum amount borrowers could borrow was calculated by aggregating payroll costs from the previous year, with annual employee salaries capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

28. Each borrower certified on the First and Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

29. Borrowers were able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities.

## FACTUAL ALLEGATIONS

30.    Four Pavecon entities applied for and received First Draw PPP loans, from the same bank, submitted on the same date.

31.    Pavecon Ltd. Co. was approved for a First Draw PPP loan of $4,319,000 on April 8, 2020 by Frost Bank. It reported 322 jobs. The entire loan amount, plus interest, was forgiven, totaling $4,368,225, on or about June 8, 2021.

32.    Pavecon Commercial, Ltd. was approved for a First Draw PPP loan of $3,337,200 on April 8, 2020 by Frost Bank. It reported 330 jobs. The entire loan amount, plus interest, was forgiven, totaling $3,374,686, on or about June 2, 2021.

33.    Pavecon Public Works LP was approved for a First Draw PPP loan of $1,283,100 on April 8, 2020 by Frost Bank. It reported 90 jobs. The entire loan amount, plus interest, was forgiven, totaling $1,290,904, on or about November 27, 2020.

34.    Atlas 10 LLC was approved for a First Draw PPP loan of $95,100 on April 9, 2020 by Frost Bank. It reported 7 jobs. The entire loan amount, plus interest, was forgiven, totaling $95,788, on or about January 7, 2021.

35.    Atlas 10 LLC was approved for a Second Draw PPP loan of $95,100 on July 23, 2021 by Frost Bank. It reported 6 jobs. The entire loan amount, plus interest, was forgiven, totaling $95,407, on or about March 24, 2021.

36.    In total, Pavecon received $9,129,500 in PPP funding. The entire amounts

were forgiven, including interest, for total forgiveness of $9,225,010.

37.   Version one of the First Draw PPP Borrower Application Form, effective April 2, 2020, required the applicant to certify in good faith that, inter alia:

   a. The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

   b. The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees [sic] or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.

   c. During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

   d. I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

38.   Some or all of the above PPP certifications were false when made by Pavecon because it applied for and received four First Draw PPP loans and one Second Draw PPP loan when it collectively was not eligible to receive PPP

funding.

39.    Pavecon applied for and received five PPP loans when it was not eligible to receive PPP funding.

## A. THE AFFILIATION RULES

40.    In addition to small business concerns, a business was eligible for a First Draw PPP Loan if the business had 500 or fewer employees **or** the business met the SBA employee-based or revenue-based size standard for the industry in which it operates (if applicable).

41.    When multiple entities are operated under common ownership or management, the SBA generally applies "affiliation rules" that require the various entities to consolidate their employee and revenue count when evaluating their loan eligibility. Their purpose is to capture exactly the situation we appear to have with Pavecon, where a single entity or individual owns and/or operates multiple subsidiaries.

42.    All of the Pavecon entities qualify as "affiliates" under the SBA's Affiliation Rules for PPP Loans, codified at 13 C.F.R. § 121.301(f), under the ownership and/or management tests.

43.    The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no

-11-

individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

44. The "affiliation based on management test" states that:

Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

45. At all relevant times, upon information and belief, Charles David Walker was the owner of either the Defendant companies or of a parent company of each of the Defendant companies.

46. Moreover, Charles David Walker was regularly listed as the President, Director, or CEO of the Pavecon entities, including as President and Director of Pavecon Ltd. Co.; President of Pavecon Public Works LP; Director of Pavecon Commercial Holding Co., Inc.; and CEO of Atlas 10 LLC.

47. In the *Murphy* petition, C. David Walker is identified as the "longtime CEO" of the "Pavecon family of companies," as well as the CEO and controlling shareholder of Pavecon Holding. He signed the agreement with Mr. Murphy as

"President, Pavecon, Ltd." When discussing the corporate restructuring in 2015, Mr. Walker is quoted as saying "everybody's percentages were the same" — they were moving from stock to partnership, with Mr. Walker offering to buy back the shares from the division presidents.

48.    The Pavecon entities share common ownership and management.

## B. AFFILIATION RULE WAIVER REQUIREMENTS

49.    Accordingly, to qualify as a small business eligible for a PPP loan, one or more of the Pavecon entities would have to meet one of three affiliation rule waiver requirements.

50.    At least two of the three waivers to the affiliation rules do not apply: none of the entities are assigned a NAICS code beginning with 72, nor have any been assigned a franchise identifier code.

51.    The third waiver applies where a business "receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958," i.e., a "small business investment company." "Financial assistance" includes any type of financing listed in 13 C.F.R. § 107.50, including loans and equity.

52.    Sidesolve has not found any evidence that Pavecon has received any SBIC lending. For example, it does not appear in any SEC EDGAR filings, news reports, or press releases.

## C. APPLICATION OF THE AFFILIATION RULES

53. Businesses could qualify for a First Draw PPP loan under any of three size standards.

54. First, the employee-based size standard permitted businesses to apply for loans if they had no more than 500 employees, or the business met the SBA employee-based standard for the industry in which it operates (if applicable).

55. A business was eligible for a Second Draw PPP Loan only if the business had 300 or fewer employees.

56. Second, the business could meet the revenue-based size standard, meaning the average annual receipts for the previous three full fiscal years is less than the revenue-based threshold established by the NAICS Code for the applicant's industry.

57. Third, the business could meet the SBA's alternative size standard, which requires that the maximum tangible net worth of the business is not more than $15 million; **and** average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

*Employment Test*

58. Collectively, Pavecon reported 749 jobs in its First Draw PPP loan applications.

59.     All of the Pavecon entities fall under NAICS code 238110, Poured Concrete Foundation and Structure Contractors, which has no employee size standard. Accordingly, the PPP First Draw program's baseline of no more than 500 employees applies. The PPP Second Draw program's baseline of no more than 300 employees also applies.

60.     If the entities are deemed to be affiliated, Pavecon does not qualify for PPP loans under the employment test.

*Revenue Test*

61.     Upon information and belief, Pavecon also would not qualify under the revenue-based size standards.

62.     NAICS 238110 has a revenue size standard of $16.5 million in annual receipts. "Annual receipts" is defined as the "total income" (or "gross income") plus the "cost of goods sold." Receipts are averaged over a business' latest three complete fiscal years to determine the average annual receipts.

63.     Alternatively, the SBA's alternative size standard requires a maximum tangible net worth is not more than $15 million; and average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

64.     Pavecon is a national entity that is extremely successful. Websites like GrowJo and Glassdoor estimate annual revenues of over $100 million.

## D. CONCLUSION

65.    Although it consisted of different legal entities, Pavecon was a single enterprise. Accordingly, upon information and belief, Defendants did not meet the requirements for eligibility under the PPP loan program, and they should be required to repay the more than $9 million they received, plus the processing fees paid by the Government.

66.    In its applications, Pavecon made false statements material to the PPP lending decisions.

67.    Insofar as the affiliate rules could have been considered unclear at the time, Pavecon applied for the PPP Loans, subsequent clarifications issued by the SBA should have informed it that it had improperly applied for and received PPP funds so that it should have repaid those funds. Instead, Pavecon not only kept the PPP funds, but it applied for and received forgiveness for those funds under false pretenses.

## COUNT I
### VIOLATIONS OF 31 U.S.C. § 3729 – FALSE CLAIMS ACT

68.    Relator hereby incorporates and realleges all other paragraphs as if fully set forth herein.

69.    As set forth above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

70.     As set forth above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

71.     As set forth above, Defendants knowingly conspired to commit a violation of the False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C).

72.     As set forth above, Defendants knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

73.     Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. 31 U.S.C. § 3729.

74.     Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a maximum civil penalty for each of the false claims and statements;

(c) awarding Relator the maximum relator's share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs and reasonable attorneys' fees and expenses; and

(e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,

Jason Marcus
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
Telephone: (770) 988-5035
Facsimile: (678) 648-5544
Jason@fcacounsel.com

-18-

JS 44 (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA ex rel. SIDESOLVE, LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Bracker & Marcus LLC
3355 Lenox Rd., Suite 660, Atlanta, GA 30326, 770-988-5035

## DEFENDANTS

PAVECON LTD. CO., et al.

County of Residence of First Listed Defendant **Tarrant**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

FILED
FEB 1 0 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [x] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. 3729-33

Brief description of cause:
False Claims Act; PPP loan fraud

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 2/6/2023

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# BRACKER & MARCUS LLC

February 7, 2023

*Via Priority U.S. Mail*
Clerk of the Court
United States District Court
501 West 10th Street, Room 310
Fort Worth, TX 76102-3673

> RE: *United States of America ex rel. Sidesolve LLC v. Pavecon LTD. CO., et al.,* Case No. TBD (TO BE FILED UNDER SEAL)

Dear Clerk of the Court,

Enclosed you will find the following items:

- 3 copies of the signed *qui tam* complaint (inc. 1 file stamp copy to be returned)
- 2 copies Civil Cover Sheet
- 2 copies Motion to Seal and Proposed Sealing Order
- 2 copies Certificate of Interested Persons
- 2 copies Pro Hac Vice Application inc. Certificate of Good Standing and Proposed Order
- 2 copies Motion to Proceed Without Local Counsel
- Check for the filing fee ($402)
- Check for the pro hac vice fee ($100)
- Self-addressed stamped envelope to return a file stamp copy of the complaint

Please file **UNDER SEAL** pursuant to the local rules for the Northern District of Texas. We appreciate the file stamp copy being returned to us in the envelope provided.

Please let me know if you have any questions or need anything further.

Sincerely,

Sheri Lang

Enclosures

3355 Lenox Road | Suite 660 | Atlanta, GA 30326
(770) 988-5035 | Info@FCACounsel.com | www.FCACounsel.com



**PRIORITY MAIL 2-DAY™**

Bracker & Marcus          0004
3355 Lenox Rd. Ste. 660
Atlanta GA 30326

C024

SHIP TO:   CLERK OF THE COURT
United States District Court
501 W 10TH ST STE 310
FORT WORTH TX 76102-3641

**USPS TRACKING #**

9405 5112 0620 3929 5793 75



RECEIVED

FEB 10 2023

DISTRICT COURT
DISTRICT OF TEXAS